# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

RONALD LAMONT SUTTON,                    )
                                         )
                    Plaintiff,           )
                                         )
            v.                           )        No. 1:20-cv-00160-HEA
                                         )
CORIZON HEALTH, INC., et al.,            )
                                         )
                    Defendants.          )

## OPINION, MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Ronald Lamont Sutton for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion, as well as plaintiff's previous filings in the United States District Court for the Eastern District of Missouri, the Court has determined that plaintiff, while incarcerated, has brought three or more civil actions that were dismissed as frivolous, malicious, or for failure to state a claim. Accordingly, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice to the refiling of a fully-paid complaint. *See* 28 U.S.C. § 1915(g). Moreover, even if plaintiff were granted in forma pauperis status, his complaint would still be subject to dismissal, as he has failed to state a claim upon which relief can be granted.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Northeast Correctional Center (NECC) in Bowling Green, Missouri. He brings this action pursuant to 42

U.S.C. § 1983. He has named Corizon Health, Inc., Director of Nursing Dawn Wade, CCMII R. Woods, Kim Weatherford-Williams, Missouri Department of Corrections Director Anne L. Precythe, and Dr. Joule N. Stevenson as defendants. Nurse Wade, CCMII Woods, Weatherford-Williams, and Director Precythe are sued in their individual capacities only. (Docket No. 1 at 2-4). Plaintiff does not indicate the capacity in which Dr. Stevenson is sued.

Plaintiff's complaint is handwritten on a Court-provided form. Including additional sheets, the complaint is thirty-one pages long. Plaintiff has also attached eighteen pages of exhibits, including an informal resolution request, an IRR response, a grievance response, a grievance appeal response, a single page from a medical record, a conduct violation report, corrective action reports, and a letter to Weatherford-Williams. The Court has reviewed these exhibits and will treat them as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

The "Statement of Claim" is repetitive, often conclusory, and at times difficult to read. The substance of the complaint, however, is that when plaintiff transferred to NECC from a different institution, his medical lay-in was changed.

With regard to Dr. Stevenson, plaintiff accuses Stevenson of discrimination and harassment and of denying his serious medical needs from January 21, 2020 to "June 31, [sic] 2020." (Docket No. 1 at 5). In particular, plaintiff states that Dr. Stevenson caused him severe suffering and pain when he denied plaintiff's lay-in when plaintiff arrived at NECC. (Docket No. 1 at 5-6). Before coming to NECC, plaintiff asserts that Dr. Moody at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) gave him a lay-in that started on December 3, 2019 and ended on December 3, 2020. (Docket No. 1 at 6). Plaintiff concludes that Dr. Stevenson acted with "evil intent" and is liable for inflicting cruel and unusual punishment upon him. (Docket No. 1 at 7).

3

As to Nurse Wade, plaintiff repeats the allegation that between January 21, 2020 and "June 31, [sic] 2020," he was denied a medical lay-in for "serious medical needs." (Docket No. 1 at 8). Specifically, plaintiff states that Nurse Wade signed a grievance response that determined that plaintiff's current treatment plan was appropriate to meet his healthcare needs, a determination with which plaintiff disagrees. (Docket No. 1 at 8; Docket No. 1-1 at 1). He also contends that Nurse Wade knew about the lay-in he had at ERDCC from Dr. Moody. Plaintiff states that Nurse Wade acted with "evil intent," "denied [his] serious medical needs," and also failed to intervene to help him. (Docket No. 1 at 9).

With regard to Corizon itself, plaintiff asserts that Corizon has denied his medical needs from approximately November 21, 2020 to "June 31, [sic] 2020." (Docket No. 1 at 11). Later in the complaint, plaintiff changes the dates to reflect that Corizon's "failure to intervene" and failure to "correct things" occurred between November 22, 2016 and July 8, 2020. (Docket No. 1 at 17). Plaintiff further states that Corizon is causing him pain and suffering that will "continue for the rest of [his] life." (Docket No. 1 at 11). He accuses Corizon's employees of "wild abuses," and contends that "municipal liability" has been established for all Corizon employees because Corizon works for the Missouri Department of Corrections. (Docket No. 1 at 11, 17).

With regard to CCMII Woods, plaintiff alleges that Woods denied his serious medical needs after being shown the lay-in approved by Dr. Moody at ERDCC. (Docket No. 1 at 12). This is a reference to the lay-in that expired on December 3, 2020, and that was not renewed when plaintiff reached NECC. Plaintiff further states that CCMII Woods punished him by putting him in the "hole" for ninety days following a conduct violation. (Docket No. 1 at 12; Docket No. 1-1 at 6). He also implies that CCMII Woods is somehow responsible for the denial of his IRRs, grievances, and grievance appeals. (Docket No. 1 at 12).

4

As to Weatherford-Williams, plaintiff asserts that she is a parole and probation "superior." (Docket No. 1 at 15). Plaintiff wrote to her office on June 4, 2020 and June 8, 2020. As such, plaintiff states that Weatherford-Williams "know[s] what's…going on with [him]." He alleges that Weatherford-Williams changed his outdate because of a conduct violation he received for not standing up during count. (Docket No. 1 at 15; Docket No. 1-1 at 15). However, plaintiff states that his old lay-in, which he had before coming to NECC, provided that he did not have to stand because of his back problems. Therefore, he contends that changing his outdate was inappropriate. Plaintiff also generally accuses Weatherford-Williams of acting with "evil intent," of denying his serious medical needs, and of causing cruel and unusual punishment. (Docket No. 1 at 15-16).

With regard to Director Precythe, plaintiff concludes that she failed to "train or supervise [her] employees or coworkers who work at all Missouri Department of Corrections [institutions]." (Docket No. 1 at 18). He further states that Director Precythe failed to intervene to "correct things." Plaintiff claims that Director Precythe is responsible for "wild abuses [from] prison to prison" and in denying his "serious medical needs" from November 21, 2016 to now. (Docket No. 1 at 19). He also states she has responsibility for denying his grievances. (Docket No. 1 at 20). Plaintiff suggests that Director Precythe is covering up "evil intent" and does not care if "plaintiff get[s] serious medical needs or die[s]."

Plaintiff states that he has suffered from back pain for the last five years. (Docket No. 1 at 25). In particular, he states he has a twisted spine that has caused severe damage. As a result, he is seeking $250 trillion in compensatory damages, as well as a further $250 trillion in punitive damages. (Docket No. 1 at 26).

5

## Discussion

Plaintiff seeks leave to commence this 42 U.S.C. § 1983 action without prepayment of the required filing fee. However, while incarcerated, plaintiff has filed at least three previous cases that were dismissed on the basis of frivolity, maliciousness, or failure to state a claim. As such, his motion to proceed in forma pauperis must be denied, and his case dismissed without prejudice to plaintiff refiling a fully-paid complaint.

### A.  28 U.S.C. § 1915(g)

The Prison Litigation Reform Act (PLRA) "enacted a variety of reforms designed to filter out the bad [prisoner] claims and facilitate consideration of the good." *Jones v. Bock*, 549 U.S. 199, 204 (2007). One of these reforms is what is commonly known as the "three strikes" provision of 28 U.S.C. § 1915(g). *Orr v. Clements*, 688 F.3d 463, 464 (8th Cir. 2012). Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Prisoners who have had three previous civil lawsuits or appeals dismissed as frivolous, malicious, or for failure to state a claim must prepay the entire filing fee. *Lyon v. Krol*, 127 F.3d 763, 764 (8th Cir. 1997). To that end, a dismissal for failure to state a claim counts as a strike whether the dismissal was with prejudice or without. *Lomax v. Ortiz-Marquez*, 140 S.Ct. 1721, 1223 (2020). This section does not apply unless the inmate litigant has three strikes at the time he filed his lawsuit or appeal. *Campbell v. Davenport Police Dep't*, 471 F.3d 952, 952 (8th Cir. 2006).

6

**B.  Plaintiff's Previous "Strikes"**

Review of plaintiff's filing history indicates that while incarcerated, plaintiff has filed at least four separate lawsuits that qualify as "strikes" under 28 U.S.C. § 1915(g). *See Sutton v. Dunklin Cty. Jail*, No. 1:09-cv-184-SNLJ (E.D. Mo. Dec. 23, 2009) (dismissed Jan. 15, 2010, under 28 U.S.C. § 1915(e)(2)(B) for being legally frivolous and failing to state a claim upon which relief could be granted); *Sutton v. Dolan*, No. 1:09-cv-185-LMB (E.D. Mo. Dec. 23, 2009) (dismissed Jan. 27, 2010, under 28 U.S.C. § 1915(e)(2)(B) for same reasons); *Sutton v. State of Mo., et al.*, No. 1:18-cv-41-NCC (E.D. Mo. Feb. 20, 2018) (dismissed June 8, 2018, under 28 U.S.C. § 1915(e)(2)(B)); and *Sutton v. Maddox, et al.*, No. 4:19-cv-208-HEA (E.D. Mo. Feb. 11, 2019) (dismissed Aug. 15, 2019, under 28 U.S.C. § 1915(e)(2)(B)). The Court notes that plaintiff did not file appeals in any of the aforementioned cases, and the time for filing such appeals has passed. Moreover, all four strikes existed at the time that plaintiff filed the instant action on July 27, 2020.

Plaintiff has also had a prior case in this Court dismissed without prejudice due to the fact that he has acquired three strikes. *See Sutton v. Dunklin Cty., et al.*, No. 1:19-cv-205-DDN (E.D. Mo. Nov. 18, 2019) (dismissed on November 21, 2019, pursuant to 28 U.S.C. § 1915(g)). He appealed the dismissal, but the appeal was dismissed for failure to prosecute on March 4, 2020. *Sutton v. Dunklin Cty., et al.*, No. 19-3631 (8th Cir. 2020).[1] Thus, for these reasons, plaintiff cannot proceed in forma pauperis unless the imminent danger exception applies.

**C.  Imminent Danger**

Pursuant to 28 U.S.C. § 1915(g), an indigent prisoner who has acquired three strikes may still file a lawsuit if he or she is in imminent danger of serious physical injury. *Higgins v.*

---

[1] On July 9, 2020, the Court dismissed another lawsuit filed by plaintiff on the basis of plaintiff having three strikes under § 1915(g). *Sutton v. Karshner*, No. 1:20-cv-14-SPM (E.D. Mo.). That case is pending appeal.

*Carpenter*, 258 F.3d 797, 800 (8th Cir. 2001). This exception provides a "safety valve for the three strikes rule to prevent impending harms." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). However, for this exception to apply, an otherwise ineligible prisoner must be in imminent danger at the time of filing. *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998). Allegations of past imminent danger are not sufficient to trigger the exception to § 1915(g). *Id.*

Here, plaintiff has not shown that the non-renewal of his lay-in places him in imminent danger. The lay-in concerns a back injury that plaintiff states he has been dealing with for five years. The lay-in at issue expired on December 3, 2020, and he did not file the instant case until July 27, 2020. There is no indication from these facts that plaintiff is facing an impending harm. Furthermore, plaintiff does not allege that he is not being seen or treated by medical staff or that he is not receiving medications or treatment. To the contrary, the exhibits plaintiff has attached to the complaint show that plaintiff is being seen by the chronic pain clinic, the pulmonary clinic, and the mental health clinic, and that he is seen by each of these separate clinics at least once every six months. The exhibits also show that there is a treatment plain in place for plaintiff's back issues, and that the decision not to renew his lay-in was based on an evaluation of his current condition. In short, based on what he has presented to the Court, plaintiff has not established that he is in imminent danger of serious physical injury sufficient to trigger the exception to the three-strikes provision in 28 U.S.C. § 1915(g). The Court will therefore deny plaintiff's motion for leave to proceed in forma pauperis, and will dismiss this action without prejudice to plaintiff refiling a fully-paid complaint.

**D.  Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)**

Even if plaintiff were granted in forma pauperis status, his case would still be subject to dismissal. Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to dismiss a case filed in

forma pauperis if it determines that the complaint is frivolous, malicious, or fails to state a claim upon which relief can be granted. In this case, plaintiff has failed to state a claim under 42 U.S.C. § 1983 against any of the defendants.

### i.   Corizon

"A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983").

In this case, plaintiff has not demonstrated that Corizon harmed him due to a policy, custom, or official action. His allegations against Corizon, such as they are, broadly claim that he has been denied medical care. Elsewhere in his complaint, though, plaintiff focuses his assertions on the fact that a medical lay-in he had before coming to NECC was not renewed. However, none of plaintiff's facts support the proposition that this non-renewal was the result of a policy, custom, or official action taken by Corizon itself. That is, there is no indication that this decision was attributable to anything other than a treatment decision made by the medical professionals who evaluated him. Moreover, to the extent that plaintiff seeks to hold Corizon liable solely because it employed some of the other defendants, such a claim fails because respondeat superior is not available under 42 U.S.C. § 1983. Therefore, even if plaintiff were allowed to proceed in forma pauperis, his claim against Corizon would be subject to dismissal.

### ii.     Dr. Stevenson

Plaintiff accuses Dr. Stevenson of being deliberately indifferent to his medical needs. However, he has not indicated the capacity in which Dr. Stevenson is sued. A plaintiff can bring a § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). If a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims. *Id. See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims"). Thus, the Court has to assume that plaintiff sued Dr. Stevenson in an official capacity only.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson*, 172 F.3d at 535. *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual,

capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Plaintiff is unclear as to whether Dr. Stevenson is employed by Corizon or the Missouri Department of Corrections. In either event, the official capacity claim against Dr. Stevenson must be treated as a claim against Stevenson's employer. To prevail, plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

As discussed above, if Dr. Stevenson is an employee of Corizon, the claim must be dismissed because plaintiff has not demonstrated that he was harmed due a policy, custom, or official action on the part of Corizon.

If Dr. Stevenson is employed by the State of Missouri, plaintiff has likewise failed to state a claim. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983"). Furthermore, in the absence of a waiver, the Eleventh Amendment bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

For these reasons, whether Dr. Stevenson is a Corizon employee or a State of Missouri employee, plaintiff has failed to state a claim. As such, even if plaintiff had been allowed to proceed in forma pauperis, his claim against Dr. Stevenson would be subject to dismissal.

Even if plaintiff had sued Dr. Stevenson in an individual capacity, the result would be the same. Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more

than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Here, most of plaintiff's claim against Dr. Stevenson consist of conclusory assertions that Dr. Stevenson harassed him, discriminated against him, and acted with "evil intent." The only true factual allegation against Dr. Stevenson is that Dr. Stevenson denied plaintiff's lay-in when he arrived at NECC.

This, without more, does not state a deliberate indifference claim. That is, plaintiff has not shown why Dr. Stevenson's decision not to renew his previous lay-in was "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Rather than providing factual support for his statement, plaintiff asks the Court to assume that Dr. Stevenson's decision resulted from improper motives. The Court will not engage in such speculation. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). Furthermore, without facts showing that Dr. Stevenson acted improperly, plaintiff's contention that he should have received a medical lay-in for his back amounts to a disagreement with a treatment decision, which does not constitute deliberate indifference. *See Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) ("A prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation").

The Court notes that there is no indication that plaintiff is being denied treatment or is not being seen by medical providers. To the contrary, his own exhibits show that he is seen by medical professionals on a regular basis. His contention that he should have received a lay-in for his back upon his arrival at NECC does not, without anything more, demonstrate deliberate indifference to

13

his medical needs. Therefore, even if plaintiff were allowed to proceed in forma pauperis, and even if he had sued Dr. Stevenson in an individual capacity, the claim would be subject to dismissal.

### iii.    Nurse Wade

Plaintiff alleges that Nurse Wade signed a grievance response in which she determined that plaintiff's current treatment plan was appropriate to meet his healthcare needs. An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). A prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993)  (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Here, plaintiff's claim against Nurse Wade amounts to a contention that she denied his grievance. However, the denial of a grievance does not amount to a substantive constitutional violation. Therefore, even if plaintiff were allowed to proceed in forma pauperis, his individual capacity claim against Nurse Wade would be subject to dismissal.

### iv.    CCMII Woods

Plaintiff accuses CCMII Woods of deliberate indifference, of putting him in the "hole," and of denying his IRRs, grievances, and grievance appeals.

With regard to the deliberate indifference claim, plaintiff merely mentions showing CCMII Woods the expired lay-in that Dr. Moody had issued while plaintiff was at ERDCC. Plaintiff does not explain what he expected CCMII Woods to do with the expired lay-in, or why plaintiff believes that Woods acted improperly. Indeed, Woods is alleged to be a correctional case manager, not a medical professional. In any event, plaintiff's vague allegations do not establish that CCMII Woods intentionally denied or delayed plaintiff's access to medical care, or interfered in any way with plaintiff's treatment or prescribed medication. *See Vaughn*, 49 F.3d at 1346. As such, he has not stated a deliberate indifference claim.

With regard to his claim that CCMII Woods placed him in the "hole" for ninety days, plaintiff has not shown a violation of his constitutional rights. In the administrative segregation context, the determination of whether prison officials denied an inmate due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). First, a plaintiff must demonstrate that he or she was deprived of life, liberty, or property by government action. *Phillips*, 320 F.3d at 846. *See also Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (stating that a court "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest"); and *Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not"). Once it has been established that a liberty interest exists, the process necessary to protect that interest must be determined. *Williams*, 662 F.3d at 1000.

As life or property is not at issue in this case, plaintiff must identify a liberty interest to sustain a due process claim. *See Phillips*, 320 F.3d at 847. The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement

15

that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). As such, in order to assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002).

The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Kennedy*, 100 F.3d at 642 (stating that plaintiff's "demotion from administrative segregation to punitive isolation is not the sort of deprivation that qualifies as atypical and significant"); and *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest"). This is so even if the demotion to segregation is without cause. *Phillips*, 320 F.3d at 847.

Here, plaintiff has not shown that being placed in administrative segregation for ninety days constituted an atypical and significant hardship. The length of time alone is not dispositive. *See Kennedy,* 100 F.3d at 641-42 (stating that plaintiff's thirty days in punitive isolation was not atypical and significant); and *Orr v. Larkins*, 610 F.3d 1032, 1033-34 (8th Cir. 2010) (stating that nine months in administrative segregation did not constitute an atypical and significant hardship).

Beyond the amount of time spent, plaintiff presents no facts demonstrating why his placement into administrative segregation amounts to a constitutional violation.

Finally, with regard to the claim that CCMII Woods was somehow responsible for the denial of plaintiff's IRRs, grievances, and grievance appeals, the Court has already noted that a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley*, 997 F.2d at 495. *See also Lomholt*, 287 F.3d at 684 (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon*, 5 F.3d 531, 1993 WL 349355, at *1 (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

For these reasons, even if plaintiff was allowed to proceed in forma pauperis, his individual capacity claim against CCMII Woods would be subject to dismissal.

###### v.    Weatherford-Williams

Plaintiff alleges that probation and parole officer Weatherford-Williams denied him medical care and changed his outdate due to a conduct violation he received for not standing up during count.

As to the deliberate indifference to medical care allegation, plaintiff has provided no facts to show that Weatherford-Williams intentionally denied or delayed plaintiff's access to medical care, interfered in any way with plaintiff's treatment or prescribed medications, or even that she had any responsibility with regard to plaintiff's healthcare. Indeed, plaintiff himself identifies her as a probation and parole "superior," and not as a medical professional or correctional officer.

With regard to changing his outdate, plaintiff has not adequately alleged that Weatherford-Williams violated a constitutional right. That is because the Supreme Court has stated that a

convicted person has no constitutional or inherent right to conditional release before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). To that end, it has been specifically held that Missouri's parole statutes "do not create a liberty interest protected by the due process clause of the Fourteenth Amendment." *Marshall v. Mitchell*, 57 F.3d 671, 672 (8th Cir. 1995). Clearly, even assuming plaintiff's allegation as true, Weatherford-Williams's actions cannot deprive plaintiff of an interest he does not possess. It thus follows that she could not have violated plaintiff's constitutional rights by simply changing his outdate. *See Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (explaining that inmate's allegations that he was denied parole based on erroneous factual determinations about past drug and alcohol abuse did not state a claim under § 1983 because inmate did not have a constitutionally-protected liberty interest in the possibility of parole).

For these reasons, even if plaintiff were allowed to proceed in forma pauperis, his individual capacity claim against Weatherford-Williams would be subject to dismissal.

### vi.    Director Precythe

Plaintiff alleges that Director Precythe failed to train or supervise her employees, denied his serious medical needs for five years, and is responsible for the denial of his grievances.

Vicarious liability is inapplicable to § 1983 suits. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). As such, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011) (stating that in order to maintain an action for

training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury).

The standard used to determine liability for failure to train is deliberate indifference. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). To show deliberate indifference, a plaintiff must prove that the defendant had notice that the procedures were inadequate and likely to result in a violation of his constitutional rights. *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). *See also Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018) ("A supervisor may be liable under § 1983 if he (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts").

With regard to plaintiff's accusation that Director Precythe failed to train or supervise her employees, plaintiff has failed to demonstrate a pattern of unconstitutional acts, much less that Precythe was deliberately indifferent to or authorized those acts. Instead, plaintiff's allegations concern a purported constitutional violation that occurred to him alone, rather than a widespread pattern.

As to plaintiff's deliberate indifference to medical needs claim, plaintiff fails to demonstrate that Director Precythe was personally responsible for overseeing plaintiff's care. Instead, he appears to rely on Director Precythe's position with the Missouri Department of Corrections to hold her liable. However, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). There is nothing in the complaint to indicate that Director Precythe was aware of plaintiff's complaints, much less mishandled them, or that there was any link between her actions or inactions and the violation of a constitutional

right. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (explaining that 42 U.S.C. § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights").

Finally, as to plaintiff's contention that Director Precythe is liable because his grievances were denied, the Court again notes that a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley*, 997 F.2d at 495. *See also Lomholt*, 287 F.3d at 684 (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon*, 5 F.3d 531, 1993 WL 349355, at *1 (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

For these reasons, even if plaintiff were allowed to proceed in forma pauperis, his individual capacity claim against Director Precythe would be subject to dismissal.

### E.  Motion to Appoint Counsel and Motion to Compel

Plaintiff has filed a motion to appoint counsel and a motion to compel. (Docket No. 3; Docket No. 8). The motions will be denied as moot as this action is being dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (Docket No. 3) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion to compel (Docket No. 8) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice to plaintiff refiling a fully-paid complaint. *See* 28 U.S.C. § 1915(g). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 29th  day of October, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE